IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD MASH                                    :        CIVIL ACTION
                                               :
        v.                                     :
                                               :        NO.  06-4479
TOWNSHIP OF HAVERFORD                          :
DEPARTMENT OF CODES ENFORCEMENT, et al. :

**L. Felipe Restrepo**
**United States Magistrate Judge**

## Memorandum / Order

Plaintiff Ronald Mash, a contractor trading as Eagle Masonry, has filed suit against the Township of Haverford ("Township"), Lori Hanlon-Widdop, the Township Director of Code Enforcement, David Cooper, a Township Code Inspector, and several Township Commissioners, alleging that defendants violated his constitutional rights under 42 U.S.C. § 1983.  Presently before the court are parties' cross motions for summary judgment.   For the reasons discussed below, this court will deny plaintiff's motion for partial summary judgment[1] and grant defendants' motion for summary judgment.

---

[1]     Mash asserts that he is entitled to summary judgment on Count Two of his First Amended Complaint, which seeks a declaratory judgment directing the Township Commissioners to conduct an appeal hearing. Since the Township provided Mash with an appeal hearing, his motion for partial summary judgment will be denied as moot.  See Pl.'s Motion for Partial Summ. J. ¶ 1-5; Pl.'s First Am. Compl., at 15-16.  Mash's motion for relief by way of declaratory judgment was denied by this Court on April 5, 2007.  (Document No. 29.)  The Commissioners' choice to provide Mash with an appeal hearing was, as Mash points out, voluntary, see Mem. of Law in Support of Pl.'s Motion for Summ. J., at 6, not compelled by this litigation.  As the hearing occurred independently form this litigation, Mash's request for attorney's fees is also denied as moot.  See 42 U.S.C. § 1988(b).

### 1.   BACKGROUND AND PROCEDURAL HISTORY

Ronald Mash, a resident of Eagleville, Pennsylvania, is the owner and sole employee of Eagle Masonry.  Ronald Mash Dep., at 6.  In December of 2005, Timothy Foster, the owner of a house at 5 Harvest Lane in the Township ("the property"), entered into a contract with Mash to perform brickwork and masonry services at the property.  Timothy Foster Dep., at 5-7; Ronald Mash Dep., at 15.  Mash posted a sign for Eagle Masonry on the lawn of the property and completed the work required by the contract as well as additional renovation work.  Ronald Mash Dep., at 16-21, 45.  Foster recalls that the work was completed in February of 2006, see Timothy Foster Dep., at 7-8, while Mash contends he had finished working at the property by the end of January, 2006, see Ronald Mash Dep., at 16-21.

On February 8, 2006, defendant David Cooper, a Township code enforcement officer, observed an Eagle Masonry sign and a painting contractor's sign on the lawn of the property, and a flooring contractor's truck in the property's driveway.  See David Cooper Dep., at 85-86.  Cooper approached the house to check whether the various contractors working on the property had licenses.[2]  See Inspection Report dated February 8, 2006 ("Inspection Report"); David Cooper Dep., at 85-88.  According to Cooper's

---

[2]  Section 67-7 of the Haverford Code provides: License required.  Except as otherwise specifically exempted by the provisions of this chapter, no person shall act in the capacity of general contractor, subcontractor, specialty contractor or home improvement contractor or engage in building maintenance, lawn care and lawn maintenance unless authorized to do so by an existing license issued in accordance with the provisions of this chapter.  See Haverford, Pa. Code § 67-7 (2007).

incident report, a confrontation between Cooper and Mash ensued when Mash refused to identify himself and ordered Cooper to leave the property.  See Inspection Report. Cooper noted that Mash was "in his face and yelling at him." See id.  Mash agrees that a confrontation with Cooper occurred, see Pl.'s First Am. Compl. ¶ 7, but he contends that Cooper was trespassing and that his position as a codes enforcement officer did not give him a right to enter the property.  See Ronald Mash Dep., at 28-30, 33-34.

Cooper issued an ordinance violation notice against Eagle Masonry for "working without a Contractors License [and] [r]efus[al] to cooperate."  Ordinance Violation Notice dated Feburary 8, 2006 ("Ordinance Violation Notice"); see also Pl.'s First Am. Compl. ¶ 7.  Cooper also reported the incident to his supervisor, Hanlon-Widdop, telling her that Mash was uncooperative and that he physically scared him.  See David Cooper Dep., at 140; Lori Hanlon-Widdop Dep., at 17.  The following day, Cooper returned to the property where he met with Foster.  Foster identified the individual who had confronted Cooper as "Ron Mash" and assured Cooper that Mash and the other contractors would obtain licenses.  See Inspection Report; David Cooper Dep., at 88-89, 107.

On March 14, 2006, Cooper issued a non-traffic citation to Mash pursuant to Section 67-7 of the Haverford Code for working at the property without a contractor's license and refusing to cooperate or apply for a license.  See Pa. Non-Traffic Citation No. P2746003-1.  Cooper stated during his deposition that he issued the citation based on

Mash's failure to apply for a license in order to comply with the ordinance violation notice issued after the February 8th incident.  David Cooper Dep., 130-31.  Mash appeared at a magistrate hearing on July 31, 2006, where he was acquitted of these criminal charges. See Tr. of Magistrate Hearing, at 26 (July 31, 2006).

In an envelope post-marked April 10, 2006, Mash sent an application for a contractor's license to the Township Department of Codes Enforcement along with a license fee of sixty dollars and a certificate of insurance, see Application for Contractor's License, as required by Sections 67-6 and 67-9B of the Haverford Code respectively, see Haverford, Pa. Code §§ 67-6, 67-9B.  On May 11, 2006, Hanlon-Widdop, the Director of the Department of Codes Enforcement, sent Mash notification that his application for a contractor's license had been denied in accordance with Ordinance 1960, Chapter 67, Section 11,[3] for "failure to obtain the necessary license and permits prior to commencing work within Haverford Township and failure to comply after notification of such requirements . . . ."[4]  Letter to Eagle Masonry Re: Haverford Township Trade License

---

[3]  Haverford Code § 67-11 provides in pertinent part: "A. The Director of Code Enforcement shall have the power upon approval of the Board of Commissioners to refuse, suspend or revoke any licenses issued under the provisions of this chapter: (1) Where the Director of Code Enforcement or the Board of Commissioners finds that the licensee has violated any provisions of this chapter or is performing or attempting to perform any act prohibited by this chapter and/or any other codes, regulations or ordinances of the Township of Haverford.  (2) Where any condition of a permit is violated."

[4]A second confrontation between Cooper and Mash occurred at Foster's property on May 8, 2006 which resulted in Cooper summoning the Township police for assistance.  See Ronald Mash Dep., at 35-44; David Cooper Dep., at 124-27.  According to the police report, Cooper observed Mash supervising an individual laying pipe in the driveway, and Mash became uncooperative when Cooper posted a stop-work order on a wall and ordered him to cease working because he

dated May 11, 2006.  The letter also notified Mash that he had a right to appeal the decision to the Township Board of Commissioners within ten days.  Id.

On May 16, 2006, Mash sent letters requesting an appeal of the decision to defendant Stephen D'Emilio, President of the Township Board of Commissioners, and Robert Kane, identified as the Chairman of the Township Zoning Hearing Board.[5]  Notice of Appeal dated May 16, 2006; see also Letter to Robert DiDomenicis dated Jan. 29, 2007; Ronald Mash Dep., Ex. M-2.  Copies of these letters were also sent to A. Leo Sereni, Esq., Township solicitor.  See Letter to Robert DiDomenicis dated Jan. 29, 2007; Ronald Mash Dep., Ex. M-2.  The certified mail receipt for the letter to D'Emilio is signed and indicates it was delivered on May 19, 2006, see Notice of Appeal dated May 16, 2006; however, D'Emilio stated at his deposition that the signature on the certified mail receipt is not his signature and he did not recall seeing the letter, see Stephen D'Emilio Dep., at 7-15.  D'Emilio also stated that he first learned that Mash was appealing the license denial a few weeks prior to his deposition in March, 2007. Id. at 17.  Named-defendant James McGarrity, who was the only other Commissioner aside from D'Emilio

---

did not have a license.  See Police Report dated May 8, 2006.  Mash was advised by police that the stop-work order was effective, and he stated he would comply.  See id.  Hanlon-Widdop stated in her deposition that, although she may have received a copy of this incident report prior to denying Mash a license, her decision was based solely on the February incident, and Mash's failure to comply with the licensing requirements at that time and this later incident did not affect her decision.  See Lori Hanlon-Widdop Dep., at 119-22.

[5]  Robert Kane is not a defendant in this matter.  Hanlon-Widdop stated in her deposition that the Zoning Hearing Board is a different body than the Board of Commissioners and is not the proper venue for an appeal.  See Lori Hanlon-Widdop Dep., at 92-94.

who was deposed, stated that he first became aware that Mash filed a request for an appeal when he received a copy of the complaint filed in the present lawsuit.  James McGarrity Dep., at 46-47.

After plaintiff's counsel provided a copy of the May 16, 2006 letter to defense counsel during discovery, the Township provided Mash with an appeal hearing before the Codes Committee on March 19, 2007.  See Mem. of Law in Support of Defs.' Mot. for Summ. J., at 13; Tr. of Hearing before the Codes Committee of Haverford Township dated Mar. 19, 2007 ("3/19/2007 Codes Committee Hearing").  At the hearing, Mash raised an objection, insisting that the hearing should be held before the entire Board of Commissioners, rather than the Codes Committee.  See 3/19/2007 Codes Committee Hearing at 6-7, 14-23.  After advising Mash that the Codes Committee was authorized to hear the appeal under Section 4-209 of the Township's Administrative Code, the matter was continued until it could be heard before a quorum of the Board of Commissioners.  See id. at 20, 26-27.[6]

---

[6]  Plaintiff's appeal hearing took place on April 9, 2007 before eight of the nine members of the Board of Commissioners.  See Tr. of Hearing Before the Board of Commissioners of Haverford Township dated April 9, 2007, at 4-5.  The hearing adjourned after evidence was presented.  Id. at 4-64.  On April 16, 2007, the Board of Commissioners reconvened, and seven Commissioners voted to affirm the denial of Mash's license application.  See Transcript of Hearing Before the Board of Commissioners of Haverford Township dated April 16, 2007, at 2-11.

Mash filed a complaint against defendants[7] in this matter in federal court on October 10, 2006.  Pl.'s Orig. Compl.  On November 20, 2006, plaintiff amended his original complaint.  Pl.'s First Am. Compl.  Chiefly, Mash alleges that defendants violated his constitutional rights under 42 U.S.C. § 1983.  Id. at ¶¶ 18-19.  Specifically, plaintiff asserts that defendants conspired to deny his application for a Township contractor's license to in order to retaliate against him for: (1) confronting Cooper at the Foster property; (2) filing a request concerning Township officials under Pennsylvania's "Right to Know Law," 65 P.S. §§ 66.1-66.9, in the Court of Common Pleas of Delaware County in December 2002[8]; and/or (3) sending a letter to Kane on May 12, 2006 in which he

---

[7]  In addition to Cooper, D'Emilio, McGarrity, and Hanlon-Widdop, plaintiff named several Township Commissioners as defendants in the present lawsuit.  These individuals include Robert E. Turnbull, Fred C. Moran, Larry Holmes, Tom Broido, and Carol A. McDonald, who were or are all members of the Township Board of Commissioners.  Plaintiff has also identified Judge Capuzzi as a named defendant.  Although it is not disputed that Capuzzi was not a Township Commissioner, at the oral argument on cross motions for summary judgment, plaintiff's counsel stated that he would not withdraw Judge Capuzzi as a party to lawsuit notwithstanding the fact that he was improperly named as a defendant.  See Summ. J. Oral Argument Tr., at 3-4.

[8]  This First Amendment retaliation claim was first alleged at the oral argument addressing parties' cross-motions for summary judgment, in which plaintiff's attorney stated that he first learned of Mash's "Right to Know Law" request and subsequent lawsuit when Mash mentioned it during his deposition.  See Summ. J. Oral Argument Tr. at 11-13.  Notably, plaintiff's counsel did not ask Hanlon-Widdop any questions whatsoever about Mash's "Right to Know Law" request or lawsuit during her deposition.  See Lori Hanlon-Widdop Dep.  Significantly, McGarrity and D'Emilio, were also completely unaware that Mash filed a "Right to Know Law" request and lawsuit.  See James McGarrity Dep., at 83-85; Stephen D'Emilio Dep., at 29-32.

It is undisputed that Mash filed a lawsuit against the Township of Haverford in state court in December 2002.

complained about Cooper's behavior at the Foster property[9].  See Pl.'s First Am. Compl. ¶ 8; David Cooper Dep., at 157-59; Letter to Robert DiDomenicis dated Jan. 29, 2007.  Mash alleges defendants' actions deprived him of his First Amendment right to freedom of speech and his Fourteenth Amendment not to be deprived of property or liberty without due process.  Plaintiff's First Amended Complaint includes a race discrimination claim under 42 U.S.C. § 1981, Pl.'s First Am. Compl. ¶¶ 18-19, 21, but he withdrew this claim at oral argument, Summ. J. Oral Argument Tr. at 13-14.   Additionally, it alleges a state law claim of wrongful use of civil proceedings under 42 Pa. C.S.A. § 8351 (Dragonetti Act), Pl.'s First Am. Compl. ¶ 9, which plaintiff amended to a common law malicious prosecution claim after requesting this change at oral argument.  Summ. J. Oral Argument Tr., at 14-19.

## 2.   MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  An issue is "genuine" if the evidence is such

---

[9]  Additionally, Mash alleges that defendants retaliated against him due to a letter that he sent to Mr. Kane, a member of the Township Zoning Hearing Committee Board on May 12, 2006, complaining about Cooper's behavior at the Foster property.  See Pl.'s First Am. Compl. ¶ 8; see also David Cooper Dep., at 157-59 (which discusses but does not include the May 12, 2006 letter which was exhibit P-1); Letter to Robert DiDomenicis dated Jan. 29, 2007.  Neither of the parties submitted the May 12, 2006 letter as evidence, and, therefore, the text is not part of the record in this case.

that a reasonable jury could return a verdict for the non-moving party.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might

affect the outcome of the case under governing law.  Id.

 A party seeking summary judgment always bears the initial responsibility for

informing the district court of the basis for its motion and identifying those portions of the

record that it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party must establish that

there is no triable issue of fact as to all the elements of any issue on which the moving

party bears the burden of proof at trial.  See In re Bessman, 327 F.3d 229, 237-38 (3d Cir.

2003) (citations omitted).  In contrast, where the non-moving party bears the burden of

proof on a particular issue at trial, the moving party's initial burden under Celotex can be

met simply by demonstrating that "there is an absence of evidence to support the non-

moving party's case."  Celotex, 477 U.S. at 325.)  After the moving party has met its

initial burden, "the adverse party's response, by affidavits or otherwise as provided by

this rule, must set forth specific facts showing that there is a genuine issue for trial."

Fed.R.Civ.P. 56(e); see also Williams v. West Chester, 891 F.2d 458, 464 (3d Cir. 1989).

Thus, summary judgment is appropriate if the non-moving party fails to make a factual

showing "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

 A motion for summary judgment looks beyond the pleadings and factual

specificity is required of the party opposing the motion.  Celotex, 477 U.S. at 322-23.

The non-moving party may not restate allegations made in its pleadings or rely upon

"self-serving conclusions, unsupported by specific facts in the record.  Id.  See also

Boykins v. Lucent Technologies, Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000)

("Speculation, conclusory allegations, and mere denials are insufficient to raise genuine

issues of material fact.").  Rather, the non-moving party must support each essential

element of its claim with specific evidence from the record.  Celotex, 477 U.S. at 322.

Further, evidence introduced to defeat or support a motion for summary judgment must be

capable of being admissible at trial.  Callahan v. AEV, Inc., 182 F.3d 237, 252 n. 11 (3d

Cir. 1999).

　　　This Court must view the evidence presented on the motion in the light most

favorable to the opposing party and make every reasonable inference in favor of that

party.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citations

omitted); see also Anderson, 477 U.S. at 255.  The standards governing cross-motions for

summary judgment are the same, although this court must construe the motions

independently, viewing the evidence presented by each moving party in the light most

favorable to the non-movant.  See Startzell v. City of Philadelphia, 2007 WL 172400, at

*4 (E.D. Pa. Jan. 18, 2007).  Summary judgment is therefore appropriate when the court

determines that there is no genuine issue of material fact after viewing all reasonable

inferences in favor of the non-movant.  See Celotex, 477 U.S. at 322.

### 3.   42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code offers private citizens a means of redress for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings of redress . . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under the color of state law."  Id.

### 4.   FIRST AMENDMENT RETALIATION

Although stated rather unclearly in his First Amended Complaint, Mash's First Amendment claim is apparently premised on retaliatory actions by defendants in response to: (1)  the 2002 lawsuit brought by plaintiff under Pennsylvania's "Right to Know Law" in the Court of Common Pleas of Delaware County against Haverford Township, in which Mash requested information pertaining to former township supervisors, including

named-defendant, Hanlon-Widdop,[10] (2) the verbal altercation between plaintiff and

Cooper at the residence of Timothy Foster on February 8, 2006, and (3) the May 12, 2006

letter Mash sent to Kane in which he complained about Cooper's behavior at the Foster

property.  See Summ. J. Oral Argument Tr., at 11, 30-31;  Pl.'s First Am. Compl. ¶¶ 8,

19;[11] David Cooper Dep., at 157-59; Letter to Robert DiDomenicis dated Jan. 29, 2007.

Additionally, at the oral argument, Mash conceded that his § 1983 claim is "grounded in

retaliation."[12]  See Summ. J. Oral Argument Tr., at 30.  For the reasons explained below,

---

[10]   At least two defendants were not employed by the Township in 2002 when plaintiff made his "Right to Know Law" request.  David Cooper did not become a property maintenance inspector until October of 2004, see David Cooper Dep., at 33-34, and Stephen D'Emilio was appointed to the Board of Commissioners in June of 2003, see Stephen D'Emilio Dep., at 7.  Since plaintiff chose not to depose defendants Robert E. Trunbull, Fred C. Moran, Larry Holmes, Tom Broido, and Carol A. McDonald, there is no evidence in the record as to whether they served the Township in 2002 at the time of plaintiff's "Right to Know Law" request.

[11]  In Paragraph 19 of his First Amended Complaint, plaintiff alleges:

> As a result of the actions of Defendants, the Plaintiff, Ronald Mash, trading as Eagle Masonry[,] has been foreclosed and precluded from exercising his civil right to be employed within the Township of Haverford [sic] as a licensed contractor and that preclusion or foreclosure has been a result of conspiracy by and between various defendants herein who, violating the law, have conspired to deprive plaintiff of his civil rights under the color of state law, all in violations of Sections 1981 and 1983 of the Civil Rights Act.  He specifically asserts his right to contract has been interfered with and asserts that interference may have been as a result of his racial and ethnic background all in violation of the rights guaranteed to him under the provisions of 42 U.S.C.A. § 1981 and further that his right to engage contracts may have been interfered with due to his notification of the objectionable actions of Defendant [sic] Cooper and therefore the denial of his right to review from an adverse decision refusing him a license to act as a contractor may also have been motivated by an intent to retaliate against the Plaintiff, all in violation of his rights pursuant to 42 U.S.C.A. §§ 1981 and 1983.

[12]  At the June 14, 2007 oral argument, the court posed the following statement to the plaintiff's counsel:  "I want to be real clear.  I think I understand your argument but the essence of your

-12-

this claim will be dismissed on summary judgment.

"The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson v. Davilla, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healy Cit. Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977)).  In Lauren W. ex. rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007), the Third Circuit found that  plaintiffs who bring a retaliation claim under 42 U.S.C. § 1983 predicated on the First Amendment "must show: (1) that they engaged in a [constitutionally] protected activity; (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her [constitutional] rights, and (3) that there was a causal connection between the protected activity and the retaliatory action."  See also Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2000) (citing Anderson, 125 F.3d at 161) (affirming district court's dismissal of First Amendment claim).  "A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protective activity."  Lauren W. ex. rel. Jean W., 480 F.3d at 267 (citing Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.

---

argument is that they denied [the license] and they took all these legal actions as a result of retaliation."  N.T., 6/14/2007 Oral Argument at 29-30.  In response, plaintiff's counsel answered: "That's correct."  Id.

Moreover, the plaintiff's counsel, admitted that plaintiff does not contend that he was denied a license by Defendants because of his race, age, or national origin.  Id. at 13.

2002)).

"To establish requisite causal connection a plaintiff must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link." Id. (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).  "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Viewing all facts as true and in the light most favorable to the non-moving party, Mash simply cannot support the elements of his First Amendment retaliation claim with any specific facts from the record.

There is no evidence, whatsoever, in the record that Hanlon-Widdop retaliated against Mash because he filed the "Right to Know Law" suit requesting records pertaining to her activities as the Director of Codes Enforcement.  Mash cannot identify any evidence that she was even aware that he filed a suit under the "Right to Know Law." Plaintiff did not even ask  Hanlon-Widdop any questions during her deposition regarding the December 2002 "Right to Know Law" suit.  See Lori Hanlon-Widdop Dep.

Likewise, there is no evidence in the record that Stephen D'Emilio knew about plaintiff's 2002 "Right to Know Law" suit against the Township.  During his deposition, he stated that he was not aware that Mash filed a Right to Know Law suit against the

-14-

Township.  Stephen D'Emilio Dep., at 30-31.  There is no indication that D'Emilio would have be aware of the "Right to Know Law" suit, as he was appointed to the Board of Commissioners in June 2003.  See id. at 7.  In addition, Mash has failed to identify any contradictory evidence in the record suggesting that D'Emilio knew about the suit.  See Stephen D'Emilio Dep.

Similarly, there is no evidence that James McGarrity knew about plaintiff's 2002 "Right to Know Law" suit against the Township.  During his deposition, he stated that he was not aware that Mash filed a Right to Know Law suit against the Township.  See James McGarrity Dep., at 85-87.  Mash has also failed to identify any contradictory evidence in the record suggesting that McGarrity knew about the suit.  See James McGarrity Dep.

Moreover, there is no evidence that any of the other individually named defendants were aware of Mash's 2002 "Right to Know Law" lawsuit, as none of these individuals were deposed by the plaintiff and Mash has not identified any evidence whatsoever in the record suggesting that they had any knowledge of the suit.

Although plaintiff alleges that David Cooper was aware of the 2002 "Right to Know Law" suit, see Summ. J. Oral Argument Tr., at 53, he has not produced any evidence that Cooper had any knowledge of the "Right to Know Law" suit filed against the Township in 2002.[13]  Plaintiff did not ask Cooper any questions regarding the

_____

[13]  Cooper died on May 7, 2007.  See Mem. of Law in Support of Defs.' Motion for Summ. J., at 2.

-15-

December 2002 "Right to Know Law" suit during his deposition.  Moreover, Cooper

stated during his deposition that he became an inspector of property maintenance for the

Township in October 2004, more than a year and a half after the "Right to Know Law"

suit was filed.  David Cooper Dep., at 33-34.  Mash, again, fails to identify any evidence

in the record supporting his contention that Cooper knew about the suit.

Plaintiff has also failed to demonstrate that defendants committed a retaliatory act

with respect to plaintiff's allegation that defendants denied his license due to plaintiff's

confrontations with Cooper at Foster's property on February 8, 2006 and May 8, 2006.

See Pl.'s First Am. Compl. ¶¶ 7- 8, 19.  There is no evidence contained in the record that

Cooper retaliated against plaintiff because of these incidents.  Further, as Cooper stated in

his deposition, Hanlon-Widdop has the sole authority to make decisions regarding

licensing, and he did not recommend that she deny plaintiff's license application.  See

David Cooper Dep., at 142-43.

Moreover, there is no evidence in the record that Hanlon-Widdop denied plaintiff's

license in retaliation for the confrontations between Mash and Cooper.  As Hanlon-

Widdop stated in her deposition, she is the only person with authority to grant or deny a

license.  She  stated that she made the decision to deny plaintiff's license without

discussing her decision with Cooper or any of the other defendants.  See Lori Hanlon-

Widdop Dep., at 14-17.  In her deposition, Hanlon-Widdop also acknowledged that she

considered the February 8, 2006 incident when she determined whether Mash was in

compliance with the licensing requirements.  Id. at 60-61.  Nevertheless, there is no evidence in the record that her consideration of this event was retaliatory or improper. Furthermore, although Hanlon-Widdop stated in her deposition that she may have had a copy of the incident report on the May 8, 2006 confrontation, she stated that this incident did not factor into her decision to deny the plaintiff's license.  Id. at 119-22.

Likewise, there is no evidence that D'Emilio retaliated against plaintiff because of the encounters between Mash and Cooper.  D'Emilio stated in his deposition that he does not know Cooper.  Stephen D'Emilio Dep., at 38.  Moreover, there is no evidence in the record that he was aware of the confrontations between plaintiff and Cooper, or that he was aware that plaintiff had even applied for a contractor's license.

Similarly, there is no evidence that McGarrity retaliated against plaintiff because of the confrontations between plaintiff and Cooper.  In his deposition, McGarrity stated that, as a Commissioner, he would not be aware of Hanlon-Widdop's decisions to deny licenses.  James McGarrity Dep., at 23.  Further, there is no evidence in the record that McGarrity was aware of these encounters.  Additionally, the record does not contain any evidence that McGarrity knew plaintiff had applied for a contractor's license.  Nor is there any evidence in the record that McGarrity discussed these issues with any of the defendants.

In addition, there is no evidence that defendants retaliated against plaintiff for sending letters dated May 12, 2006 to two Township officials who are not defendants in

this case and the Township solicitor, as plaintiff contends.  See Pl.'s First Am. Compl. ¶¶ 8, 19; see also Letter to Robert DiDomenicis dated Jan. 29, 2007.  First, the letters in question are dated after plaintiff's license was denied, so plaintiff cannot prove a causal connection between these letters and the alleged retaliatory action.[14]  See Lauren W. ex. rel. Jean W., 480 F.3d at 267.

Second, both Cooper and Hanlon-Widdop stated in their depositions that they had never seen these letters.  See David Cooper Dep., at 159-61; Lori Hanlon-Widdop Dep., at 100.  Moreover, there is no evidence that any of the other named defendants were aware of plaintiff's complaints about Cooper set forth in the May 12, 2006.

In sum, plaintiff has failed to identify any evidence whatsoever to satisfy the third element required to establish a First Amendment retaliation claim under the Third Circuit's standard set forth in Lauren W. ex. rel. Jean W., 480 F.3d at 267 (stating that "a causal connection between the protected activity and the retaliatory action" is a required element in a First Amendment retaliation claim);  See also Estate of Smith, 318 F.3d at 512 (citing Anderson, 125 F.3d at 161).  Mash does not present any evidence demonstrating either "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory act" or "a pattern of antagonism coupled with timing to establish a causal link."  Id. (citing Krouse, 126 F.3d at 503-04).  In addition, plaintiff fails to demonstrate that the trier of fact should infer causation in light of the "evidence

_____

[14]  Hanlon-Widdop denied plaintiff's license application on May 11, 2006, the day before plaintiff wrote the letter at issue.  See Letter to Eagle Masonry Re: Haverford Township Trade License dated May 11, 2006.

gleaned from the record as a whole." Id. (citing Farrell, 206 F.3d at 281).  Thus,

summary judgment will granted with regard to this claim.

### 5.  PROPERTY/LIBERTY INTEREST UNDER THE FOURTEENTH AMENDMENT

Plaintiff asserts that, in the course of denying his application for a Township

contracting license, defendants deprived him of his civil right to be employed as a

contractor within the Township.  See Pl.'s First Am. Compl. ¶¶ 14, 18-19, 21; see also

Summ. J. Oral Argument Tr., at 9-10.  Although stated vaguely, plaintiff apparently

alleges a claim pursuant to 42 U.S.C. § 1983 for the deprivation of a property or liberty

interest to engage in his chosen profession, in violation of the Due Process clause of the

Fourteenth Amendment.  See Summ. J. Oral Argument Tr., at 9-10 (in which plaintiff's

counsel states that Mash is claiming due process violations under both liberty interest and

property interest theories).

A § 1983 claim based on a procedural due process violation is "dependent upon

the denial of a constitutionally protected property or liberty interest."  Piecknick v. Pa., 36

F.3d 1250, 1256 (3d Cir. 1994) (citing U.S. Const. amend. XIV, § 1; Mathews v.

Eldridge, 424 U.S. 319, 332 (1976); Carter v. City of Phila., 989 F.2d 117, 119-20 (3d

Cir. 1993).  "The right to hold specific private employment and to follow a chosen

profession free from unreasonable governmental interference comes within both the

'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments."  Piecknick, 36

F.3d at 1259 (citing Greene v. McElroy, 360 U.S. 474, 492 (1959)).  However, plaintiff

has failed to identify a constitutionally protected property or liberty interest in a Township

contractor's license or an occupation in the Township as a contractor.

To have a property interest in a benefit protected by due process, a person "must

have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of

entitlement to it."  Id. at 1256 (quoting Bd. of Regents v. Roth, 408 U.S. 564 (1972)).

The source of such property interests is not the Constitution, but rather, state law.  See id.

at 1256; Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984).  Therefore, a property

interest exists only if it arises "from either statute, regulation, government policy, or a

mutually explicit understanding . . . ."  Swinehart v. McAndrews, 221 F. Supp. 2d 552,

557-58 (E.D. Pa. 2002), aff'd, 69 Fed. Appx. 60 (3d Cir. 2003).

An individual who has obtained a professional license or has fulfilled all

prerequisites upon which a license is automatically conferred in accordance with a statute

or regulation may have a property interest in that license.  See, e.g., Herz v. Degnan, 648

F.2d 201, 208 (3d Cir. 1981) (finding a property interest in a license to practice

psychology when: "Under the licensing statute the holder of a license is entitled to

automatic renewal upon completion of a form and payment of a fee."; Hayes v. Reed,

1997 WL 700499, at *5 (E.D. Pa. Oct. 29, 1997) (protected property interest in license to

practice medicine).  In contrast, a mere applicant for a license or benefit who has not met

the necessary qualifications does not have a property interest in said license.  See Martin

v. Pa. State Real Estate Comm'n, 1985 WL 2783, at *2 (E.D. Pa. Sept. 18, 1985).

Likewise, an applicant does not have a property interest in a benefit where the governing statute or regulation provides for discretion in the decision to grant the benefit.  See Anderson v. City of Phila., 845 F.2d 1216, 1221 (3d Cir. 1988) (finding that applicants on police department eligibility list had no tenable claim of entitlement to employment, thus no protected property interest, where the applicable statute allows agency discretion in hiring).

Section 67-7 of the Haverford Code governs licensing of contractors.  Haverford, Pa. Code Sections 67-1 to 67-15.  It requires an individual to obtain a contractor's license prior to beginning any contracting or building maintenance work within the Township. Id. Section 67-7.  Additionally, it grants the Director of the Department of Code Enforcement, currently Hanlon-Widdop, the authority to grant or deny a contractor's license application.  See id. Section 67-5(A).  The ordinance does not require the automatic granting of a license upon an applicant meeting objective criteria; rather, it authorizes the Director of the Department of Code Enforcement to determine whether an applicant qualifies for a license, taking into consideration factors such as an applicant's trustworthiness and character.  See id. Sections 67-5(A), 67-10(A).  Although payment of an application fee and the showing proof of insurance are required to obtain a license, an entitlement to a license does not arise upon the satisfaction of these requirements.  See id. Sections 67-5(A), 67-9(A).  Hanlon-Widdop denied Mash's application for a license under Section 67-11 for failure to comply with the Township regulations and working

-21-

without a license.  See Letter to Eagle Masonry Re: Haverford Township Trade License dated May 11, 2006.  Because Section 67-11 provides the Director of the Department of Code Enforcement authority to refuse to issue a license for failure to comply with the provisions of the contractor's license chapter, Hanlon-Widdop's decision was clearly within her authority, see Sections 67-5(A), 67-11, since Mash did at least two months of work in the Township without a license, see Ronald Mash Dep., at 15-21.  Thus, Mash cannot establish an entitlement to a contractor's license; therefore, he has no protected property interest in obtaining a license.

    With respect to a due process liberty interest, "[i]t is the liberty to pursue a particular calling or occupation and not the right to a specific job that is protected by the Fourteenth Amendment."  Piecknick, 36 F.3d at 1262 (citing Bernard v. United Twp. High Sch. Dist. No. 30, 5 F.3d 1090, 1092 (7th Cir. 1993)).  Viewing all inferences in the light most favorable to Mash, the issue is whether his liberty to pursue his chosen occupation has been "unreasonably interfered with or eliminated by the conduct of the defendants," or "merely curtailed."  Kepler v. Mirza, 102 F. Supp. 2d 617, 623 (W.D. Pa. 1999); see Piecknick, 36 F.3d at 1260.

    Mash essentially claims that the denial of his application for a Township contractor's license constitutes an unreasonable governmental interference with his right to be employed as a contractor within the Township.  See Pl.'s First Am. Compl. ¶ 19. Cases addressing whether the government's restriction of a plaintiff's ability to pursue his

chosen occupation in a narrow geographic locale have found such actions do not deprive the plaintiff of a protected liberty interest.  See, e.g., Latessa v. N.J. Racing Comm'n, 113 F.3d 1313, 1318 (3d Cir. 1997); Kepler, 102 F. Supp. 2d at 625-26.  In Latessa, 113 F.3d at 1318, the Third Circuit affirmed the district court's grant of summary judgment against the plaintiff because he failed to present evidence that his non-reappointment to his position as horse racing judge at Meadowlands Race Track effectively barred him from his occupation as a racing judge.  The court found it dispositive that the plaintiff had subsequently worked as a racing judge in Maryland and that he did not attempt to establish that employment at other venues was not reasonably available to him.  Id.

In Kepler, 102 F. Supp. 2d at 623, the plaintiffs claimed that officials from a District Mining Office of the Pennsylvania Department of Environmental Protection deprived them of their liberty to pursue their occupation of designing passive treatment systems for mining operations by refusing to approve their plans.  The court granted summary judgment for the defendants, holding that plaintiffs' right to pursue their occupation was not unreasonably limited or deprived because they had in the past and were currently working on projects in districts and states outside the defendants' jurisdiction.  See id. at 625-26.

Here, like the plaintiffs in Latessa and Kepler, Mash is attempting to define his occupation too narrowly by limiting the scope to contracting in the Township.  Plaintiff has failed to provide evidence that his right to engage in his occupation as a masonry

-23-

contractor has been outright deprived or unreasonably restricted.  Mash remains free to

work as a contractor outside the Township, and he has failed to offer evidence that such

work is not reasonably available to him.

Mash's vague testimony that Foster's friends at the golf club have stopped

inquiring about his services is insufficient.  See Ronald Mash Dep., at 17, 64.  Moreover,

Foster stated in his deposition that he is not aware of any of his friends or acquaintances

seeking plaintiff for masonry work.  See Timothy Foster Dep., at 29-30.  Mash has not

pointed with any specificity to any agreement or contract for any job with particular

potential customers that have been lost as a result of his license being denied.  See Ronald

Mash Dep., at 64-69.  He has also not attempted to establish that he has been unable to

work as a contractor since his license was denied. In fact, plaintiff testified that he has

worked for his counsel in this case, Frank Marcone, and he estimates that he has

completed fifteen contracting jobs between July 2006 and January 2007.  See id. at 66,

89-90.  Furthermore, Mash stated during his deposition that prior to the work he did for

Foster,  to his recollection, he had never worked in the Township in over a decade of

operating Eagle Masonry.  See id. at 7, 44-45.  He also maintains that he was finished

with all work he agreed to do for Foster in the Township prior to his license being denied.

See id. at 19.  Additionally, Foster  states that he has decided not to do any of the

additional work that he tentatively discussed with Mash.  See Timothy Foster Dep., at 49-

59.  As a result, Mash has failed to demonstrate deprivation of a protected liberty interest

in his occupation.  Plaintiff has failed to demonstrate any evidence whatsoever that he

engaged in a constitutionally "protected activity" or that the defendants in this case

violated his property and/or liberty interests.  See Lauren W. ex. rel. Jean W. v.

DeFlaminis, 480 F.3d at 267 (3d Cir. 2007) (stating that a constitutionally "protected

activity" is a required element in a First Amendment Retaliation claim.)  See also

Thomas, 463 F.3d at 296; Estate of Smith, 318 F.3d at 512 (citing Anderson, 125 F.3d at

161).  Therefore, summary judgment is appropriate with respect to Mash's claims that the

defendants violated his right to due process.

## 6.   CONSPIRACY

To establish a conspiracy in violation of 42 U.S.C. Section 1983, a plaintiff must

prove "(1) the existence of a conspiracy involving state action; and (2) a [deprivation] of

civil rights in furtherance of the conspiracy by a party to the conspiracy."  Marchese v.

Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000).

The conspiracy claims presented by plaintiff are legally inadequate for two

reasons.  First, there is no underlying violation of plaintiffs' First and Fourteenth

Amendment rights.  See, supra,  §§ IV and V; see also Summ. J. Oral Argument Tr. at  9-

10.  Second, the record simply does not establish the existence of a conspiracy.

In order to prove a conspiracy, a plaintiff must show that "a combination of two or

more persons [coordinated] to do a criminal act, or to do a lawful act by unlawful means

or for an unlawful purpose" by making "specific factual allegations of combination,

agreement, or understanding among all or between any of the defendants to plot, plan, or

conspire to carry out the alleged chain of events."  Marchese, 110 F. Supp. 2d at 371

(citations omitted).  Central to any conspiracy claim are specific factual allegations that

"there was a mutual understanding among the conspirators to take actions directed toward

an unconstitutional end."  Lamb Found. v. N. Wales Borough, No. 01-950, 2001 U.S.

Dist. LEXIS 18797, at *47 (E.D. Pa. Nov. 16, 2001) (citing Duvall v. Sharp, 905 F.2d

1188, 1189 (8th Cir. 1990)); Russo v. Voorhees Twp., 403 F. Supp. 2d 352, 358 (D.N.J.

2005); Safeguard Mut. Ins. Co. v. Miller, 477 F. Supp. 299, 304 (E.D. Pa. 1979).

Circumstantial evidence may be used to prove a conspiracy.  Smith v. Wambaugh, 29 F.

Supp. 2d 222, 229 (M.D. Pa. 1998).  Therefore, whether there is a conspiracy is typically

a jury question if there is a possibility to "infer from the circumstances that the alleged

conspirators had a meeting of the minds and thus reached an understanding to achieve the

conspiracy's objections."  Id. (citations omitted).

Plaintiff's § 1983 conspiracy claim cannot survive this motion for summary

judgment because plaintiff cannot identify any evidence in the record supporting his

contention that defendants conspired against him to deprive him of any constitutionally

protected right.  In her deposition, Hanlon-Widdop stated that she acted alone in denying

Mash his license, and there is no evidence whatsoever that there was a conspiracy to deny

Mash any constitutionally protected right.  Therefore, summary judgment for the

defendants is appropriate as a matter of law.

## 7.   WHETHER SUMMARY JUDGMENT IS
## APPROPRIATE WITH RESPECT TO HAVERFORD TOWNSHIP

The defense argues that Haverford Township is entitled to the entry of summary

judgment since plaintiff has not established a viable Monell claim against it. Monell v.

N.Y. Dept. of Social Services, 436 U.S. 658 (1978); see Mem. of Law in Support of

Defs.' Motion for Summ. J. at 28-31; Summ. J. Oral Argument Tr. at 37-39.  They argue

that plaintiff has not offered any evidence that the Township had any policy or custom

that caused the alleged First Amendment violations.

In Monell, 436 U.S. at 691, the Supreme Court held that municipalities may not be

found liable on a theory of respondeat superior under § 1983.  See also Colburn v. Upper

Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Section 1983 municipal liability is only

proper when a municipal employee or official deprives the plaintiff of his or her federally

protected rights pursuant to a municipal policy,[15] custom,[16] or practice.  Monell, 436 U.S.

---

[15]  A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers."  Monell, 436 U.S. at 690; see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted).  Such a policy "generally implies a course of action consciously chosen from among various alternatives."  Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).  Limiting liability to identifiable policies ensures that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997).

[16]  A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law."  Brown, 520 U.S. at 404.  This requirement should not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal

at 691.  In order to recover from a municipality under Section 1983, a plaintiff must: (1) identify a policy or custom that deprived him or her of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and the plaintiff's injury.  Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  Alternatively, a plaintiff can also plead a Monell claim "where the failure to train a municipal employee amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 387-88 (1989).

With respect to plaintiff's 1983 claim against the Township of Haverford, Mash alleges in his first amended complaint that defendants retaliated against him for filing a suit under Pennsylvania's "Right to Know Law" against the Township of Haverford.  See Pl.'s First Am. Compl. ¶ 19; Summ. J. Oral Argument Tr., at 9-11, 30-31. Plaintiff further alleges that the individual defendants had final authority to establish policy with regard to denying his license application.  Summ. J. Oral Argument Tr., at 23-26.

"A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and injuries suffered." Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).  The law is clear that liability will not be imposed under § 1983 on a respondeat superior or vicarious liability theory.

---

policy . . . ." Tuttle, 471 U.S. at 823-24.

-28-

See Colburn, 946 F.2d at 1027.

"Policy is made when a 'decision maker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.  A curse of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

In the present case, this court finds that plaintiff has not identified any evidence whatsoever that the Township had an official policy or custom adopted by a final decision maker to deny plaintiff his license in violation of any laws or statutes.  Therefore, summary judgment is appropriate for the defendant as a matter of law.

## 8.    MALICIOUS PROSECUTION

At oral argument to consider the cross-motions for summary judgment, plaintiff requested that he be allowed to withdraw his state claim under the Dragonetti Act and amend it to a malicious prosecution claim.[17]  In support of his request, he submitted a written memorandum to this court on June 22, 2007.  See Pl.'s "Memorandum of Law on Inclusion of the Common Law Torts of Malicious Use and Malicious Abuse of Process Within the Dragonetti Act in Pennsylvania further Plaintiff's Position Regarding the

---

[17]  The issuance of the citation and Mash's required appearance at the July 31, 2006 magistrate hearing to resolve it form the basis of plaintiff's former claim under the Dragonetti Act.  See Pl.'s First Am. Compl. ¶ 8-11.  Plaintiff requested that he be allowed to amend this claim to a common law malicious prosecution claim in light of the fact that the Dragonetti Act applies only to civil proceedings. Summ. J. Oral Argument Tr. at 14-18.  (In the present case, the litigation at issue was a criminal matter.  Tr. of Magistrate Hearing, at 4-5.)

Monell Decision" dated June 22, 2007 ("Pl.'s 7/22/2007 Memorandum").  Here, plaintiff asserts that he should be allowed to amend this charge to a 42 U.S.C. § 1983 malicious prosecution action for violations of the Fourth and Fourteenth Amendments.  Pl.'s 7/22/2007 Memorandum, at 5.  Specifically, he contends that these rights have been violated "since he was and continues to be deprived of his right to be employed under those Amendments."  Id.

In Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000), the Third Circuit held that, in light of the United States Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994), a claim of malicious prosecution under § 1983 must be based on a provision of the Bill of Rights providing "an explicit textual source of constitutional protection" and not merely substantive due process.  However, as the Third Circuit explained in Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998), a § 1983 malicious prosecution claim may be based upon misconduct "that violates the Fourth Amendment, the procedural due process clause, or any explicit text of the Constitution."

In order to prevail in a Section 1983 malicious prosecution action, a plaintiff must show the following elements:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (citing DiBella v. Borough of

Beachwood, 407 F.3d 599, 601 (3d Cir. 2005)).  Plaintiff contends that he suffered a

deprivation of liberty consistent with the concept of seizure because the Township refused

to permit him to work without a permit.  However, he presents no evidence that this

alleged deprivation resulted as a consequence of the July 31, 2006 magistrate hearing.

Additionally, the Third Circuit has recognized that "[p]retrial custody and some onerous

types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure;"

however, "attendance at trial d[oes] not [itself] qualify as a Fourth Amendment seizure."

Johnson, 477 F.3d at 85 n. 14 (citing  DiBella, 407 F.3d at 603).  Because trial attendance

does not qualify as a deprivation of liberty sufficient to support a Fourth Amendment

malicious prosecution claim plaintiff can not establish that he satisfied the fifth element

of malicious prosecution as a result of having to attend trial due to the criminal charges

filed by defendants.[18]  See id.  Moreover, the malicious prosecution claim should be

dismissed because plaintiff does not provide any evidence whatsoever demonstrating

misconduct that violates the Fourth Amendment, procedural due process, or any explicit

---

[18]  Further, with respect to plaintiff's Fourth Amendment malicious prosecution claim, Mash did not contend that his Fourth Amendment rights had been violated in his amended complaint, nor does he explain how his Fourth Amendment rights were violated.  See Pl.'s 7/22/2007 Memorandum, at 5.

In addition, plaintiff has not identified any evidence to suggest that any defendant other than David Cooper was involved in initiating this criminal proceeding.  Moreover, plaintiff has not identified that defendant David Cooper initiated the proceeding without probable cause or acted maliciously or for a purpose other than bringing the plaintiff to justice.

text of the Constitution.  See Torres, 163 F.3d at 173.

## 9.   CONCLUSION

For the aforementioned reasons, this Court will grant Defendants' Motion for

Summary Judgment (Document No. 39). In addition, this Court will deny Plaintiff's

Partial Motion for Summary Judgment (Document No. 37).

An implementing order follows.


_____BY THE COURT:


/s/ L. Felipe Restrepo_____
L. Felipe Restrepo
United States Magistrate Judge

August 3, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD MASH                              :        CIVIL ACTION
                                         :
        v.                               :
                                         :        NO.  06-4479
                                         :
TOWNSHIP OF HAVERFORD DEPARTMENT          :
OF CODES ENFORCEMENT, et al.             :

_____

_____ **ORDER**

        **AND NOW**, this 3rd day of August, 2007, after hearing oral argument and upon

consideration of Plaintiff's Partial Motion for Summary Judgment (Document No. 37),

Defendants' Motion for Summary Judgment (Document No. 39), and the responses

thereto, it is hereby **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is

**DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

        The Clerk of the Court is directed to mark this case closed for statistical purposes.


_____

                              BY THE COURT:


                              _____

_

                              L. Felipe Restrepo
                              United States Magistrate Judge


-33-